IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRYAN ISSACS,                          :

     Plaintiff,                    :

v.                                     :
                            Civil Action No. GLR-12-1060

BALTIMORE CITY FIRE                    :
DEPARTMENT, et al.,
                                  :

     Defendants.                   :

                                  :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants', Mayor & City Council of Baltimore (the "City"), the Baltimore City Fire Department ("BCFD"), James Clack, and Donald Heinbuch, Motion for Summary Judgment. (ECF No. 33). Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Defendants' Motion for Summary Judgment will be granted.

## I. BACKGROUND[1]

Plaintiff Brian Isaacs was hired by the BCFD as a front-line Firefighter on January 15, 2003. On March 6, 2008, he fell out of a moving fire truck and suffered a serious head injury that left him unable to hear out of his right ear. After the accident, Isaacs was placed on paid injury leave for twelve months. At some point during this period, Dr. James Levy, Director of the BCFD's

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and the parties' briefings on the instant motion, and are viewed in the light most favorable to the nonmoving party.

Public Safety Infirmary, and the BCFD determined that Isaacs was unable to safely and reliably perform all the essential functions of a Firefighter.  In light of this decision, Isaacs requested that he be permitted to return to work as an instructor at the BCFD Training Academy.

After Isaacs returned to work as a training instructor on March 30, 2009, he presented several specialized physicians' opinions to the BCFD, each stating he could sufficiently perform the essential functions of a Firefighter pursuant to the National Fire Protection Association 1582 Standard on Medical Requirements. Further, Isaacs requested the opportunity to demonstrate that he could perform the essential functions of a Firefighter through a field performance test.  Multiple discussions were held concerning Isaacs's individualized abilities.  Nevertheless, Dr. Levy and the BCFD declined to reverse their position barring Isaacs's return to Firefighter status despite the specialized medical opinions and without providing him with the opportunity to demonstrate his abilities through a field performance test.

Isaacs filed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"), which he requested be accepted as his EEOC charge, on December 11, 2009.  He received a Notice of Right to Sue on January 5, 2012, and instituted this action on April 5, 2012.  Isaacs asserts five claims: employment discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.

(2012) (Count One); employment discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (2012) (Count Two); Retaliation (Count Three); violation of his right to equal protection of the law under the Fourteenth Amendment to the Constitution of the United States by way of 42 U.S.C § 1983 (2012) (Count Four); and employment discrimination in violation of 42 U.S.C § 1981 (2012) (Count Five). On March 17, 2014, Defendants moved for Summary Judgment on all counts. (ECF No. 33). The Motion is ripe for disposition.

## II. DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

3

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

B.   **Analysis**

1. **Proper Parties**

At the outset, the City is the only proper Defendant to this suit. First, in his Opposition to Defendants' Motion for Summary Judgment, Isaacs withdrew his claims against the individually named Defendants James Clack and Donald Heinbuch. (Pl.'s Opp'n Mot. Summ. J. ["Opp'n"] 1 n.1, ECF No. 44). Accordingly, Defendants James Clack and Donald Heinbuch will be dismissed.

Second, Defendants argue the BCFD is an executive department of the City government that does not have an independent legal identity or the capacity to sue or be sued. The Court agrees. See Jenkins v. Balt. City Fire Dept., 862 F.Supp.2d 427, 441-42 (D.Md. 2012) (relying on the Baltimore City Charter in holding that the

4

BCFD is an entity without the power to sue or be sued), <u>aff'd on other grounds</u>, 519 F.App'x. 192 (4th Cir. 2013).  Accordingly, all claims against the BCFD will be dismissed with prejudice.  Thus, the City is the only remaining Defendant in this action.

**2. Proper Claims**

Additionally, in his Opposition to Defendants' Motion for Summary Judgment, Isaacs withdrew his race discrimination claim (Count Two).  (Opp'n 1 n.1).  As a result of voluntarily dismissing his racial discrimination claim, however, Isaacs claim under § 1981 fails because his only remaining allegation is discrimination on the basis of disability.

Section 1981 claims are limited to claims of discrimination on the basis of race and alienage.  <u>Holder v. N.C. Dep't of Corr.</u>, 804 F.2d 1250, 1986 WL 16159, at *1 n.* (4th Cir. Nov. 10, 1986); <u>Clement v. Satterfield</u>, 927 F.Supp.2d 297, 307 (W.D.Va. 2013) ("[Section] 1981 does not prohibit discrimination on the basis of disability.").  Therefore, insofar as Isaacs is seeking relief under § 1981, the City will be granted summary judgment with respect to Count Five.

**3. Timeliness**

Further, Isaac's ADA claim (Count One) and § 1983 claim (Count Four) will be dismissed as time-barred.

A claim for a violation of the Fourteenth Amendment for intentional employment discrimination under § 1983 is subject to the statute of limitations that the forum state provides for

general personal injury cases.  Owens v. Okure, 488 U.S. 235, 250 (1989).  In Maryland, the general statute of limitations for personal injury cases is three years.  See Md.Code. Ann. Cts. & Jud. Proc. § 5-101 (West 2014).  Assuming arguendo that Isaacs's filing limitations period commenced on March 30, 2009, the date he reported to work as an instructor at the Training Academy, the alleged discrimination occurred more than three years prior to April 5, 2012, the date Isaacs initiated this action.  Accordingly, Isaacs's § 1983 claim (Count Four) will be dismissed as time-barred.

In employment discrimination lawsuits brought pursuant to Title I of the ADA, filing a charge of discrimination with the EEOC tolls the ADA statute of limitations because Title I requires the exhaustion of administrative remedies prior to instituting a judicial action.[2]  42 U.S.C. § 12117 (2012) (incorporating Title VII's requirement that a plaintiff file a charge with the EEOC before pursuing a suit in federal court); see also Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012) (finding the same).  Thus, whenever an incident of alleged employment discrimination occurs in Maryland, the aggrieved party is required

---

[2] The ADA does not contain a statute of limitations. Jeandron v. Bd. of Regents of Univ. Sys. of Md., 510 F.App'x 223, 2013 WL 541044, at *266 (4th Cir. Feb. 14, 2013). Thus, the ADA is subject to the state statute of limitations that applies to the most analogous state-law claim. A Soc'y Without a Name v. Va., 655 F.3d 342, 347 (4th Cir. 2011). "Maryland courts apply the three-year limitations period governing general civil actions to ADA . . . claims." Jeandron, 510 F.App'x at *226 (citing Schalk v. Assoc. Anesthesiology Practice, 316 F.Supp.2d 244, 251 (D.Md. 2004)).

to file a complaint with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) (2012).[3]

Here, Defendants dispute the timeliness of Isaacs's EEOC charge. Isaacs filed his EEOC Intake Questionnaire on December 11, 2009. (Opp'n Ex. 3, at 4, ECF No. 44-3). Under certain circumstances, an EEOC Intake Questionnaire may be construed as a charge, especially where the plaintiff indicates the intent to initiate a charge of discrimination. See Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 419 (2008) (Thomas, J., dissenting). Assuming the Court construes Isaacs's December 11, 2009 EEOC Intake Questionnaire as a charge of discrimination, the crucial issue is whether there is an allegation of an unlawful employment practice occurring after February 14, 2009.[4]

Thus, the Court must "identify precisely the 'unlawful employment practice' of which [Isaacs] complains," Del. State Coll. v. Ricks, 449 U.S. 250, 257 (1980), and the precise date the discriminatory act took place, id. at 259. A discriminatory act occurs at the time the discriminatory decision was made and communicated to the plaintiff, "not upon the time at which the consequences of the acts became most painful." Id. at 258 (quoting

---

[3] Because Maryland is a state with an "agency with authority to grant or seek relief from such practice," 42 U.S.C. § 2000e-5(e)(1), the filing period is extended from one hundred and eighty days to three hundred days.

[4] The 300-day period preceding December 11, 2009 commenced February 14, 2009.

_Abramson v. Univ. of Haw._, 594 F.2d 202, 209 (9th Cir. 1979))
(emphasis in the original).

Moreover, "the pendency of a grievance, or some other method
of collateral review of an employment decision, does not toll the
running of the limitations periods," _Ricks_, at 261 (citing _Elec._
_Workers v. Robbins & Myers, Inc._, 429 U.S. 229 (1976)), and an
employers' refusal to rectify a past employment decision does not
constitute a continuing violation, _see Knight v. Columbus, Ga._, 19
F.3d 579, 580 (11th Cir. 1994) ("[W]here the employer engaged in a
discrete act of discrimination [outside the limitations period],
allegations that the discriminatory act continues to adversely
affect the employee or that the employer presently refuses to
rectify its past violation will not satisfy the [statute of
limitations].") (alteration in the original); _Lever v. Nw. Univ._,
979 F.2d 552, 556 (7th Cir. 1992) ("An employer's refusal to undo a
discriminatory decision is not a fresh act of discrimination.");
_Morrison v. Carleton Woolen Mills, Inc._, 108 F.3d 429, 443 (1st
Cir. 1997) (finding no continuing violation where plaintiff
strenuously pursued reinstatement during the limitations period).
The filing limitations period commenced, therefore, at the time the
BCFD's decision concerning Isaacs's ability to return to work as a
Baltimore City Firefighter was made and communicated to him.

As early as September 8, 2008, Dr. Levy determined that Isaacs
was "permanently unable to perform, in a safe regular, reliable
manner all of the essential functions of a Fire Fighter/Paramedic

for Baltimore City." (Mot. Summ. J. Ex. 8, at 2, ECF No. 33-9). On October 7, 2008, Dr. Levy reviewed with Isaacs his hearing loss as it applied to his ability to perform those essential functions, but agreed that further assessment would be undertaken. (Id. at 1). After further assessment, on December 4, 2008, Dr. Levy advised Isaacs of his final determination that "due to [Isaacs's] unilateral hearing loss[, he was] permanently unable to return to work as a Baltimore City Fire Fighter." (Mot. Summ. J. Ex. 7, ECF No. 33-8); (see also Mot. Summ. J. Ex. 8, at 1). During the December 4, 2008 meeting, Isaacs discussed with Dr. Levy whether he could return to work as a Fire Instructor. (Mot. Summ. J. Ex. 8, at 1). On January 13, 2009, Isaacs requested that Dr. Levy officially endorse his bid to return to work as a Fire Instructor in writing. (Mot. Summ. J. Ex. 9, ECF No. 33-10).

Isaacs argues the controlling date for the EEOC charge is March 30, 2009, the date he reported to work as an instructor at the Training Academy, because the decision to deny him the opportunity to report back to fulltime Firefighter status was tentative until that point. The Supreme Court of the United States has held, however, that "entertaining a grievance complaining of the [employment] decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made." Ricks, 449 U.S. at 261 (alteration in the original). By Isaacs's own admission, although

"[i]t was not what [his] heart desired," (Isaacs Dep. 84:15, Jan. 5, 2013), he requested to be considered for the Fire Instructor position because he otherwise would have been forced to retire from the Fire Department and he intended to somehow remedy Dr. Levy's recommendation that he not return to work as a Firefighter. (Isaacs Dep. 83:1-20, 84:8-18).

Additionally, Isaacs admits in his Complaint that he communicated to the BCFD in December 2008, that he believed its decision to prohibit him from returning to full Firefighting duties was discriminatory. (Compl. ¶ 28). Thus, it is clear from the undisputed facts in the record that the BCFD's decision to deny Isaacs the opportunity to return to full duty Firefighter status was made and communicated to him no later than January 13, 2009, the date on which Isaacs requested that Dr. Levy officially endorse his bid to return to work as a Fire Instructor; more than 300 days before he filed a charge of discrimination with the EEOC on December 11, 2009. Accordingly, Isaacs's ADA claim (Count One) will be dismissed as time-barred.

### 4. Retaliation

Isaacs's Retaliation claim (Count Three) fails because he is unable to establish a prima facie case of retaliation. The ADA prohibits any person from discriminating "against any individual because such individual ... made a charge ... under this chapter." 42 U.S.C. § 12203(a). To demonstrate a prima facie claim of retaliation under the ADA, a plaintiff must show (1) he engaged in

protected conduct; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected conduct and the adverse employment action. A Soc'y Without a Name, 655 F.3d at 350.

First, Isaacs's allegations that the BCFD retaliated against him by demoting him and refusing to reinstate him to full Firefighter status fail. Even assuming Isaacs met the first two prongs to establish a prima facie claim of retaliation, he cannot demonstrate a link between his filing of the EEOC charge and the BCFD's decision to deny him the opportunity to resume front-line firefighting duties because the decision was made and communicated to him before he filed the EEOC charge. While the grievance process appears to have continued into 2011, Isaacs has alleged no facts indicating that the BCFD's refusals to reverse its previous decision were themselves separate violations.[5]

Further, Isaacs's allegation that the BCFD retaliated against him by falsely charging him with misconduct similarly fails under the causal connection element. The record reflects only one instance of misconduct charges brought against Isaacs related to an incident that occurred on November 11, 2011. First, a separation of almost two years between the BCFD's charge of misconduct and Isaacs's disability discrimination charge with the EEOC negates any inference that a causal connection exists between the two. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d

---

[5] See supra Section II.B.3. (rejecting the continuing violation theory).

653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two."). Second, the record is devoid of any allegation or evidence that the relevant decision makers responsible for charging him with misconduct, investigating the charge, conducting the disciplinary hearing, or approving the suspension knew that he filed an EEOC charge of disability discrimination. See id. ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the [decision maker's] knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").

Accordingly, Isaacs's Retaliation claim (Count Three) fails as a matter of law.

### III. CONCLUSION

For the reasons given above, Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED.  A separate Order will follow.

Entered this 12th day of November, 2014

/s/

_____
George L. Russell, III
United States District Judge